CASE 86—PETITION EQUITY—MAY 25.

## Phelps vs. Ratcliffe, &c.

APPEAL FROM CHRISTIAN CIRCUIT COURT.

1. An attachment lien is created on the defendant's estate at the time it is placed in the hands of the officer. If the service of the attachment process is acknowledged by the defendant, as prescribed in section 76, Civil Code, a lien on his estate is created, and operates only from the time of such acknowledgment.

2. By amended pleadings, describing and attempting to tack on additional property, not mentioned in the original petition and attachment, no lien is created on such additional property until an attachment has been duly issued on such amended pleadings, and placed in the hands of the proper officer, or service thereof is duly acknowledged by the defendant.

3. Nothing to the contrary appearing, the court will presume the sheriff did his duty, and first levied those attachments which first came to his hands.

H. A. PHELPS,                                    For Appellant,
                    CITED—
    1 *Littell*, 302 ; *Scott vs. McMillen.*

BUCKNER & MAJOR,                                 For Appellees,
                    CITED—
    3 *B. Mon.*, 203 ; 2 *Met.*, 284 *and* 530.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

B. E. Randolph, being insolvent, as legatee and distributee of Mrs. Ann F. Green, owned an interest in her personal estate, also a certain negro slave belonging to her. Mrs. Ann F. Green held a life interest in certain other slaves, the remainder of which belonged, in fee, to her sister, Lucy Green, who died before her sister Ann F., and her remainder interest descended to her children and their representatives, said Randolph being a grandchild of Mrs. Lucy Green, and the only representative of his deceased mother. June 4, 1860, Ratcliffe, by two separate suits in chancery, enjoined Randolph from selling or disposing of his interest in Mrs. Ann F. Green's estate, and attached the same—one in his own right and the other as executor of Ann M. Ratcliffe, deceased.

Twenty-one days thereafter Jas. S. Phelps, by suit in chancery, enjoined said Randolph from disposing of, and attached, his interest in remainder in the slaves, which had been willed for life to Mrs. Ann F. Green by Peyton, and the remainder to Mrs. Lucy Green or her children, in fee, as well as his interest in the estate of Mrs. Ann F. Green.

On the same day, Poindexter and Straughn also filed their separate suits of injunction and attachment. The process in favor of Phelps was served by the sheriff, and acknowledged by Randolph in the other two cases, late in the afternoon of the same day, after service of Phelps's process, as proved by Randolph and agreed in the case.

Subsequently to the filing of these suits and the service of process, Ratcliffe, October 8, filed an amended petition asking for a sale of Randolph's interest in the remainder of the slave held for life by Mrs. Ann F. Green by the will of her mother, Mrs. Peyton, remainder to Mrs.

Lucy Green or her children, in the event that his interest in Mrs. Ann F. Green's estate attached should be insufficient to pay plaintiff's debt.

Before the final hearing, by an arrangement between all the parties, Randolph's interest in each class of slaves had been separated and sold, and was found insufficient to pay the attaching creditors, hence a question of priority arose, which we are asked to adjudicate. The court adjudged that Ratcliffe's two debts be first paid, and then Straughn's. As Ratcliffe first enjoined and attached Randolph's interest in Mrs. Ann F. Green's estate, priority as to this fund was correct; but he never did attach the interest of Randolph in the slaves in which Mrs. Ann F. Green had but a life estate, and the remainder of which was willed by Mrs. Peyton to Mrs. Lucy Green, or her children; as to this interest, Phelps was the first attaching creditor, and therefore entitled to priority.

Ratcliffe's amended petition was filed after Phelps had obtained process and attached this fund. It sought no attachment, however, but seems to be framed with a view of tacking it to his original suit and attachment. Even had he then obtained an attachment, his lien would have been subsequent to Phelps's. As Phelps had his process in the sheriff's hands, and served before Randolph accepted the service of Straughn and Poindexter's process, he, by section 233, Civil Code, obtained a lien from the time of its delivery to the sheriff; and by section 227, it is made the officer's duty to levy the attachments in the order in which they were received; and, as said by this court in *Buckner vs. Bush* (1 *Duv.*, 394), nothing to the contrary appearing, the court presumes the sheriff did his duty, and first levied those attachments which first came to his hands. But, as also said in *Lane vs. Robinson*, 18 *B. Monroe*, 632, *section 227, Civil Code*, is merely

directory; and if the sheriff shall fail to comply, still this does not vitiate the creditor's lien, but it may be corrected by proper motion, and the sheriff may amend his return. In this case, Straughn did not get a lien until the acceptance of service by Randolph, as he had not placed his process in the sheriff's hands.

By sections 474, 476, and 477, Civil Code, a judgment creditor, with a return of *nulla bona*, may file an equitable suit against his debtor, and may obtain an attachment without affidavit or bond; and a *lien shall be created in his favor upon the levy of the attachment, or service of a summons, with the object of the action indorsed thereon;* but his judgment and return of execution gives him no lien. He might, perhaps, have obtained a lien by suing out another execution, and having it placed in the officer's hands, whose duty it would have been to levy, and then a suit in equity would have been proper to subject the joint interest under our statute of February 12, 1858 (2 *Stant.*, 513); but without this, he could only acquire a lien by filing a suit and obtaining an attachment, and placing it in the officer's hands, or having its service acknowledged as provided in the recited sections of the Code; and this is perfectly consistent with *Lewis vs. Quinker*, 2 *Metcalfe*, 284; *same*, 530. Phelps, by his proceedings, obtained the prior lien as to the interest in the slaves willed by Mrs. Peyton to her daughter, Ann F. Green, for life, remainder to her other daughter, Lucy Green, as against both Ratcliffe and Straughn.

As these prior liens will consume the whole fund, and as Poindexter is not complaining, it is not necessary to determine whether equality or priority, as between him and Straughn, would have been proper.

Wherefore, the judgment is reversed, with directions for further proceedings consistent herewith.